**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FRANCISCO MEJIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| BIG LEAGUE ADVANCE FUND I, L.P., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**COMPLAINT**

Plaintiff Francisco Mejia, by and through his undersigned counsel, complains of Defendant Big League Advance Fund I, L.P., and for cause of action respectfully shows this Honorable Court the following:

**Nature of Action**

1. This is an action seeking declaratory relief, and recovery of compensatory, consequential, and reasonable attorneys' fees and costs, and other relief arising from Defendant's wrongful and unconscionable conduct, including breaches of the duty of good faith and fair dealing, and unjust enrichment by Defendant Big League Advance Fund I, L.P. ("Defendant BLA").

2. As discussed in detail below, Plaintiff is a borrower who took a loan from Defendant under unconscionable terms and conditions and through unconscionable means.

**The Parties**

3. Plaintiff Francisco Mejia is a natural person, who is a citizen of the State of Ohio.

4. Defendant, Big League Advance Fund I, L.P., is a Delaware limited partnership whose principal place of business is 8319 Looking Glass Way, Fairfax, Virginia 22031. This defendant may be served through its registered agent for service of process in Delaware:

CORPORATION SERVICE COMPANY, 251 Little Falls Drive, Wilmington, Delaware 19808.

## Jurisdiction and Venue

5. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Francisco Mejia is a citizen of the State of Ohio, Defendant's principal is a citizen of the Commonwealth of Virginia, and upon information and belief following reasonable investigation, no member of Defendant limited partnership is a citizen of the State of Ohio.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). Furthermore, Section 9.3 of the contract in dispute provides that venue is proper in this Court.

## Background

7. Plaintiff Francisco Mejia is 22 years old and is a native of the Dominican Republic. He completed the U.S. equivalent of the ninth grade and speaks only Spanish.

8. In 2012, Plaintiff Mejia signed with the Cleveland Indians baseball organization, as an international free agent, and has risen through the Cleveland organization since then.

9. In 2016, Plaintiff Mejia enjoyed a 50 game hitting streak in the minor leagues. He has been recognized as a rising star in baseball and has been called a "prized prospect" in the Cleveland organization.

10. In September 1, 2017, the Cleveland Indians called Plaintiff Mejia up to the Major League.

11. Defendant BLA is in the business of loaning money to up and coming, yet financially struggling, foreign baseball players.

12. Defendant BLA's founder and president is Michael Schwimer, a former Major League Baseball player.

13. Defendant BLA is reportedly financially backed by several angel investors.

14. Defendant BLA's business plan involves utilizing various "runners" who approach up and coming baseball players in areas such as the Dominican Republic. These runners (usually former baseball players) advise prospects that Defendant BLA will advance them considerable sums of money, to be repaid by a percentage of the player's future earnings. The prospects are generally young, uneducated and unsophisticated. Few speak English. Most, if not all, come from very modest families who are struggling financially.

15. Over the course of several months in 2016, Plaintiff ultimately entered into three contracts with Defendant BLA.

16. In the Fall of 2016, an agent of BLA approached Plaintiff about obtaining a loan from BLA. At the time, Plaintiff's mother was very ill and the family needed significant funds to pay for her medical treatment.

17. On or about September 21, 2016, Plaintiff signed the initial contract with BLA in Cleveland, Ohio. In that contract, BLA advanced funds to Plaintiff and Plaintiff agreed to repay BLA with a significant percentage of his future earnings.

18. Defendant BLA's agents encouraged Plaintiff to receive additional funding from Defendant BLA.

19. On or about November 10, 2016, Plaintiff signed a second contract with BLA at the Miami, Florida airport. There was no interpreter present during the signing of this contract. As with the first contract, BLA advanced additional funds to Plaintiff and Plaintiff agreed to repay BLA with an even higher percentage of his future earnings.

20. On or about December 20, 2016, Plaintiff signed a third contract with BLA, at a hotel in the Dominican Republic. As with the first two contracts, BLA advanced additional funds to Plaintiff and Plaintiff agreed to repay BLA with an even higher percentage (10 percent) of his future earnings. At this point, Defendant BLA had advanced a total of $360,000.00 to Plaintiff. Defendant BLA's President Michael Schwimer was present at this meeting. Although the contract represents that Plaintiff was represented by counsel in the transaction, he was not. On information and belief, BLA hired and paid for an attorney to "represent" Plaintiff; however, this lawyer served as BLA's lawyer, not Plaintiff's. This third contract (the "BLA Contract") superseded the prior two contracts. A copy of the BLA Contract is attached hereto as Exhibit A.

21. On or about December 8, 2017, BLA representatives showed up at Plaintiff's family home in the Dominican Republic to collect payment on the contract amounting to $9,063.00, claimed as 10 percent of the Plaintiff's salary allotted for a 31-day period. BLA representatives threatened to sue Plaintiff and prevent him from playing baseball if he did not pay under the contract. BLA representatives also attempted to have Plaintiff give up even more of his earnings for more money, but he refused. However, under duress, Plaintiff agreed to pay this one installment under the contract.

22. At this time, Plaintiff is projected to earn more than $100 million in career earnings. At that rate, and if the BLA Contract is enforced, Plaintiff would be obligated to repay BLA over $10 million – on a $360,000 principal.

### **The BLA Contract is Unconscionable**

23. The BLA Contract evidences, on its face, a gross imbalance in the parties' respective rights and obligations, and an exploitation of an underprivileged, unsophisticated borrower.

24. Pursuant to Section 9.3 of the BLA Contract, the BLA Contract is to be construed in accordance with and governed by Delaware law. In the context of reviewing a contract under the Uniform Commercial Code, Delaware courts have considered ten factors as an aid to determine whether a contract is unconscionable and unenforceable:

    i. The use of a boilerplate contract drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position.

    ii. A significant cost-price disparity or excessive price.

    iii. A denial of basic rights and remedies to a buyer of consumer goods.

    iv. The inclusion of penalty clauses.

    v. The circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect.

    vi. The hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract.

    vii. Phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them.

    viii. An overall imbalance in the obligations and rights imposed by the bargain.

    ix. Exploitation of the underprivileged, unsophisticated, uneducated and the illiterate.

    x. Inequality of bargaining or economic power.

*Fritz v. Nationwide Mutual Ins. Co.*, 1990 WL 186448, at *4-5 (Del. Ch. Nov. 26, 1990).

25. The Delaware Supreme Court has held that a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other" or "whether the provision amounts to taking of an unfair advantage by one party over the other." *See Tulowitzki v. Atlantic Richfield Co.*, 396 A.2d 956, 960 (Del. 1978); *see also Fritz,* 1990 WL 186448, at *4-5.

26. While not all of the factors are necessary to find unconscionability, all of the above factors are present in this case.

### Count I
### Declaratory Relief

27. Plaintiff repeats and incorporates by reference the averments set forth above as if fully set forth herein.

28. Plaintiff contends that the BLA Contract is unconscionable and unenforceable.

29. Defendant contends that the BLA Contract is not unconscionable and is enforceable.

30. An actual controversy exists involving the rights or other legal relations of Plaintiff and Defendant. The controversy is between Plaintiff and Defendant, and their interests are real and adverse. The issue involved in the controversy is ripe for judicial determination.

Case 1:18-cv-00296-RGA   Document 1   Filed 02/21/18   Page 7 of 8 PageID #: 7

31. By reason of the foregoing, Plaintiff is entitled to a declaratory judgment declaring that the BLA Contract is unconscionable and unenforceable.

### Count II
### Breach of Duty of Fair Dealing

32. Plaintiff repeats and incorporates by reference the averments set forth above as if fully set forth herein.

33. Defendant has failed and refused to deal fairly with Plaintiff in connection with Defendant's business practices and imposing unconscionable terms of the BLA Contract.

34. As a direct result of Defendant's breaches of its duty of fair dealing with Plaintiff, Plaintiff has suffered and will continue to suffer injury as heretofore alleged.

### Count III
### Unjust Enrichment

35. Plaintiff incorporates by reference the averments set forth above as if fully set forth herein.

36. Defendant's practices are unconscionable and unjustified, and no reasonable person knowingly would impose or accept the terms and conditions of the advances made by Defendant. Meanwhile, Defendant profits richly from this scheme. Unless the Court concludes the BLA Contract is unconscionable or illegal, Plaintiff has no adequate remedy at law for redress.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

   a.   Declaring the BLA Contract between Defendant and Plaintiff unconscionable and unenforceable;

7

01:22900238.1

b. Awarding to Plaintiff damages, including compensatory damages, consequential and incidental damages, for Defendant's violation of the duty of good faith and fair dealing and unjust enrichment;

c. Voiding Plaintiff's loan and returning to the respective parties all amounts Plaintiff borrowed from, and paid to, Defendant pursuant to his loan agreement with Defendant;

d. Awarding to Plaintiff pre- and post-judgment interest;

e. Awarding to Plaintiff all costs of this action, including reasonable attorney fees; and

f. Awarding such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

OF COUNSEL:

Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Peter K. Taaffe
Texas Bar No. 24003029
ptaaffe@txattorneys.com
Crystal Del Toro
cdeltoro@txattorneys.com
Texas Bar No. 24090070
THE BUZBEE LAW FIRM
JP Morgan Chase Tower
600 Travis, Ste 7300
Houston, Texas 77002

Dated: February 21, 2018

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Richard A. DiLiberto, Jr.*
Richard A. DiLiberto, Jr. (No. 2429)
rdiliberto@ycst.com
Martin S. Lessner (No. 3109)
mlessner@ycst.com
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Plaintiff Francisco Mejia*