## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANCISCO MEJIA, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-296-RGA |
| | ) | |
| BIG LEAGUE ADVANCE FUND I, L.P., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant and Counter-Plaintiff Big League Advance Fund I, L.P. ("BLA"), by and through its undersigned counsel, hereby submits its Answer and Affirmative Defenses to the Complaint of Plaintiff and Counter-Defendant Francisco Mejia ("Mejia") and asserts a Counterclaim against the same.

## ANSWER

### Nature of Action

1.      This is an action seeking declaratory relief, and recovery of compensatory, consequential, and reasonable attorneys' fees and costs, and other relief arising from Defendant's wrongful and unconscionable conduct, including breaches of the duty of good faith and fair dealing, and unjust enrichment by Defendant Big League Advance Fund I, L.P. ("Defendant BLA").

**Answer:**      BLA admits that Mejia has asserted a complaint against BLA relating to an agreement between BLA and Mejia (the "Third Brand Agreement").  BLA denies that Mejia's claims have any merit or that he is entitled to any relief.  BLA denies the remaining allegations in Paragraph 1.

2.      As discussed in detail below, Plaintiff is a borrower who took a loan from Defendant under unconscionable terms and conditions and through unconscionable means.

**Answer:**      Denied.

## The Parties

3.      Plaintiff Francisco Mejia is a natural person, who is a citizen of the State of Ohio.

**Answer:**      BLA is without sufficient knowledge to admit or deny the allegations in Paragraph 3.

4.      Defendant, Big League Advance Fund I, L.P., is a Delaware limited partnership whose principal place of business is 8319 Looking Glass Way, Fairfax, Virginia 22031. This defendant may be served through its registered agent for service of process in Delaware: CORPORATION SERVICE COMPANY, 251 Little Falls Drive, Wilmington, Delaware 19808.

**Answer:**      Admitted, except BLA's principal place of business is 4835 Sangamore Road, Bethesda, MD 20816, and not 8319 Looking Glass Way, Fairfax, VA 22031.

## Jurisdiction and Venue

5.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Francisco Mejia is a citizen of the State of Ohio, Defendant's principal is a citizen of the Commonwealth of Virginia, and upon information and belief following reasonable investigation, no member of Defendant limited partnership is a citizen of the State of Ohio.

**Answer:**      BLA is without sufficient knowledge to admit or deny allegations regarding Mejia's citizenship. BLA admits that it is headquartered in the Commonwealth of Virginia. BLA further admits that none of its members are citizens of the state of Ohio. The remaining allegations in Paragraph 5, including allegations about the amount in controversy, are legal conclusions to which no answer is required.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). Furthermore, Section 9.3 of the contract in dispute provides that venue is proper in this Court.

**Answer:**      BLA admits that Section 9.3 of the Brand Agreement provides that venue is proper in this Court. The remaining allegations in Paragraph 6 are legal conclusions to which no answer is required.

## Background

7.      Plaintiff Francisco Mejia is 22 years old and is a native of the Dominican Republic. He completed the U.S. equivalent of the ninth grade and speaks only Spanish.

**Answer:**      BLA admits that Mejia is a native of the Dominican Republic.  BLA admits that Mejia is currently 22 years old.  BLA denies that Mejia speaks "only Spanish."  BLA is without sufficient knowledge to admit or deny the remaining allegations in Paragraph 7.

8.       In 2012, Plaintiff Mejia signed with the Cleveland Indians baseball organization, as an international free agent, and has risen through the Cleveland organization since then.

**Answer:**      BLA admits that Mejia signed with the Indians in 2012 as an international free agent. BLA further admits that Mejia had reached the Single A level at the time of signing the Third Brand Agreement and that he started the 2017 baseball season with the Indians' Double A affiliate, before being called up to the major leagues in September 2017.  BLA denies the remaining allegations in Paragraph 8.

9.       In 2016, Plaintiff Mejia enjoyed a 50 game hitting streak in the minor leagues.  He has been recognized as a rising star in baseball and has been called a "prized prospect" in the Cleveland organization.

**Answer:**      Admitted.

10.     In September 1, 2017, the Cleveland Indians called Plaintiff Mejia up to the Major League.

**Answer:**      Admitted.

11.     Defendant BLA is in the business of loaning money to up and coming, yet financially struggling, foreign baseball players.

**Answer**:      Denied.

12.     Defendant BLA's founder and president is Michael Schwimer, a former Major League Baseball player.

**Answer:**      Admitted.

13.     Defendant BLA is reportedly financially backed by several angel investors.

**Answer:**       BLA admits that it has investors.  BLA lacks sufficient knowledge to admit or deny

the allegations concerning "reports" about BLA's investors.

14.       Defendant BLA's business plan involves utilizing various "runners" who approach up and coming baseball players in areas such as the Dominican Republic. These runners (usually former baseball players) advise prospects that Defendant BLA will advance them considerable sums of money, to be repaid by a percentage of the player's future earnings. The prospects are generally young, uneducated and unsophisticated. Few speak English.  Most, if not all, come from very modest families who are struggling financially.

**Answer:**       BLA admits that it makes investments in professional baseball players in return for a

percentage of the players' potential future major league earnings and, in some cases, other related

potential future income.  BLA admits that it has employees and independent contractors that assist

BLA in carrying out its business, including by contacting baseball players.  BLA denies the remaining

allegations in Paragraph 14.

15.       Over the course of several months in 2016, Plaintiff ultimately entered into three contracts with Defendant BLA.

**Answer:**       BLA admits that it entered into three Brand Agreements with Mejia, dated September

21, 2016; November 10, 2016; and December 20, 2016.

16.       In the Fall of 2016, an agent of BLA approached Plaintiff about obtaining a loan from BLA. At the time, Plaintiff's mother was very ill and the family needed significant funds to pay for her medical treatment.

**Answer:**       BLA admits that its first contact with Mejia or his purported representatives

regarding an investment from BLA was in or around September of 2016.  BLA does not have

sufficient information to admit or deny allegations concerning Mejia's family.  BLA denies the

remaining allegations in Paragraph 16.

17.       On or about September 21, 2016, Plaintiff signed the initial contract with BLA in Cleveland, Ohio.  In that contract, BLA advanced funds to Plaintiff and Plaintiff agreed to repay BLA  with a significant percentage of his future earnings.

**Answer:**       BLA admits that BLA and Mejia executed a Brand Agreement on September 21, 2016

in Cleveland, Ohio, under which BLA invested $100,000 (advanced funds in return for a stake in

certain future earnings) in Mejia.  BLA denies the remaining allegations in Paragraph 17.

18.    Defendant BLA's agents encouraged Plaintiff to receive additional funding from Defendant BLA.

**Answer:**    Denied.

19.    On or about November 10, 2016, Plaintiff signed a second contract with BLA at the Miami, Florida airport.  There was no interpreter present during the signing of this contract.  As with the first contract, BLA advanced additional funds to Plaintiff and Plaintiff agreed to repay  BLA with an even higher percentage of his future earnings.

**Answer:**    BLA admits that, at Mejia's request, BLA entered into another Brand Agreement with Mejia in Miami, Florida on November 10, 2016, and that there was no English to Spanish interpreter at that signing because the signing was conducted in Spanish, in which Mejia is fluent as he alleged in Paragraph 7.  BLA admits that it invested additional funds in Mejia in accordance with that agreement. BLA denies the remaining allegations in Paragraph 19.

20.    On or about December 20, 2016, Plaintiff signed a third contract with BLA, at a hotel in the Dominican Republic.  As with the first two contracts, BLA advanced additional funds to Plaintiff and Plaintiff agreed to repay BLA with an even higher percentage (10 percent) of his future earnings.  At this point, Defendant BLA had advanced a total of $360,000.00 to Plaintiff. Defendant BLA's President Michael Schwimer was present at this meeting.  Although the contract represents that Plaintiff was represented by counsel in the transaction,  he was not.  On information and belief, BLA hired and paid for an attorney to "represent" Plaintiff; however, this lawyer served as BLA's lawyer, not Plaintiff's.  This third contract  (the "BLA Contract") superseded the prior two contracts.  A copy of the BLA Contract is  attached hereto as Exhibit A.

**Answer:**    BLA admits that at Mejia's request, BLA entered into a Third Brand Agreement with Mejia in the Dominican Republic on December 20, 2016.  BLA admits that it invested additional sums in Mejia in accordance with the Third Brand Agreement, and that BLA's total investment in Mejia was $360,000.  BLA admits that the Third Brand Agreement superseded the two previous agreements. BLA admits that Michael Schwimer was at the execution of the Third Brand Agreement.  BLA admits that Mejia attached a copy of the Third Brand Agreement to his Complaint, in violation of the Brand Agreement's confidentiality provision.  *See* Counterclaim *infra*.  BLA denies the remaining allegations of Paragraph 20.

21.     On or about December 8, 2017, BLA representatives showed up at Plaintiff's family home in the Dominican Republic to collect payment on the contract amounting to $9,063.00, claimed as 10 percent of the Plaintiff's salary allotted for a 31-day period. BLA representatives threatened to sue Plaintiff and prevent him from playing baseball if he did not pay under the contract. BLA representatives also attempted to have Plaintiff give up even more of his earnings for more money, but he refused. However, under duress, Plaintiff agreed to pay this one installment under the contract.

**Answer:**     BLA admits that Mejia made a payment of $9,063.00 to BLA on or about December 8, 2017, representing a percentage of his professional Major League Baseball salary for 2017 that Mejia agreed to pay BLA in exchange for its investment in the Third Brand Agreement. BLA denies the remaining allegations in Paragraph 21.

## The BLA Contract is Unconscionable

22.     At this time, Plaintiff is projected to earn more than $100 million in career earnings. At that rate, and if the BLA Contract is enforced, Plaintiff would be obligated to repay BLA over $10 million – on a $360,000 principal.

**Answer:**     BLA is without sufficient knowledge to admit or deny this "projection" of Mejia's future possible professional Major League Baseball salary. BLA denies the remaining allegations in Paragraph 22.

23.     The BLA Contract evidences, on its face, a gross imbalance in the parties' respective rights and obligations, and an exploitation of an underprivileged, unsophisticated borrower.

**Answer:**     Denied.

24.     Pursuant to Section 9.3 of the BLA Contract, the BLA Contract is to be construed in accordance with and governed by Delaware law. In the context of reviewing a contract under the Uniform Commercial Code, Delaware courts have considered ten factors as an aid to determine whether a contract is unconscionable and unenforceable:

    i.   The use of a boilerplate contract drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position.

    ii.  A significant cost-price disparity or excessive price.

    iii. A denial of basic rights and remedies to a buyer of consumer goods.

    iv.  The inclusion of penalty clauses.

    v.   The circumstances surrounding the execution of the contract, including its  commercial setting, its purpose and actual effect.

    vi.   The hiding of clauses which are disadvantageous to one party in a mass of fine print  trivia or in places which are inconspicuous to the party signing the contract.

    vii.   Phrasing clauses in language that is incomprehensible to a layman or that divert his  attention from the problems raised by them or the rights given up through them.

    viii.   An overall imbalance in the obligations and rights imposed by the bargain.

    ix.   Exploitation of the underprivileged, unsophisticated, uneducated and the illiterate.

    x.   Inequality of bargaining or economic power.

*Fritz v. Nationwide Mutual Ins. Co*., 1990 WL 186448, at *4-5 (Del.  Ch. Nov. 26, 1990).

**Answer:**    BLA admits that Section 9.3 of the Third Brand Agreement provides that it is to be construed in accordance with and governed by the internal laws of the State of Delaware.  The remaining allegations in Paragraph 24 are legal conclusions to which no answer is required.

    25.   The Delaware Supreme Court has held that a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other" or "whether the provision amounts to taking of an unfair advantage by one party over the other." *See Tulowitzki v. Atlantic Richfield Co.*, 396  A.2d 956, 960 (Del. 1978); *see also Fritz,* 1990 WL 186448, at *4-5.

**Answer:**    The allegations in Paragraph 25 are legal conclusions to which no answer is required.

    26.   While not all of the factors are necessary to find unconscionability, all of the above factors are present in this case.

**Answer:**    BLA denies that the above factors are present in this case.  The remaining allegations in Paragraph 26 are legal conclusions to which no answer is required.

### Count I
### Declaratory Relief

    27.   Plaintiff repeats and incorporates by reference the averments set forth above as if fully set forth herein.

**Answer:**    BLA repeats and incorporates by reference its answers to Paragraphs 1 through 26 as

if fully set forth herein.

28.     Plaintiff contends that the BLA Contract is unconscionable and unenforceable.

**Answer:**      BLA admits that Mejia makes this allegation in his Complaint.  BLA denies the

remaining allegations in Paragraph 28.

29.     Defendant contends that the BLA Contract is not unconscionable and is enforceable.

**Answer:**      Admitted.

30.     An actual controversy exists involving the rights or other legal relations of Plaintiff
and Defendant.  The controversy is between Plaintiff and Defendant, and their interests are real and
adverse.  The issue involved in the controversy is ripe for judicial determination.

**Answer:**      Paragraph 30 contains legal conclusions to which no answer is required.

31.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment declaring
that the BLA Contract is unconscionable and unenforceable.

**Answer:**      Denied.

**Count II**
**Breach of Duty of Fair Dealing**

32.     Plaintiff repeats and incorporates by reference the averments set forth above as if
fully set forth herein.

**Answer:**      BLA repeats and incorporates by reference its answers to Paragraphs 1 through 31 as

if fully set forth herein.

33.     Defendant has failed and refused to deal fairly with Plaintiff in connection with
Defendant's business practices and imposing unconscionable terms of the BLA Contract.

**Answer:**      Denied.

34.     As a direct result of Defendant's breaches of its duty of fair dealing with Plaintiff,
Plaintiff has suffered and will continue to suffer injury as heretofore alleged.

**Answer:**      Denied.

### Count III
### Unjust Enrichment

35.     Plaintiff incorporates by reference the averments set forth above as if fully set forth herein.

**Answer:**     BLA repeats and incorporates by reference its answers to Paragraphs 1 through 34 as if fully set forth herein.

36.     Defendant's practices are unconscionable and unjustified, and no reasonable person knowingly would impose or accept the terms and conditions of the advances made by Defendant. Meanwhile, Defendant profits richly from this scheme. Unless the Court concludes the BLA Contract is unconscionable or illegal, Plaintiff has no adequate remedy at law for redress.

**Answer:**     Denied.

### AFFIRMATIVE DEFENSES

BLA asserts the following affirmative defenses and reserves the right to amend its Answer to assert any additional affirmative defenses when and if, in the course of its investigation, discovery or preparation for trial it becomes appropriate to assert such affirmative defenses. In asserting these defenses, BLA does not assume the burden of proof for any issue that would otherwise rest on Mejia.  BLA has not knowingly or intentionally waived any applicable affirmative defenses.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

All or part of the relief sought by Mejia is barred by the doctrine of unjust enrichment.

### Third Affirmative Defense

Mejia's claims are barred by the doctrine of unclean hands.

**Fourth Affirmative Defense**

Mejia's claims are barred by the doctrine of estoppel.

**Fifth Affirmative Defense**

Mejia's claims are barred by the doctrine of waiver.

**Sixth Affirmative Defense**

Mejia's claims are barred by the doctrine of assumption of risk.

**COUNTERCLAIM**

1.      Mejia filed suit against BLA on February 21, 2018.  Under Fed. R. Civ. P. 13(a),
BLA is entitled to assert this Counterclaim in conjunction with its Answer.

2.      BLA and Mejia executed the Third Brand Agreement on December 20, 2016.  In
accordance with the Third Brand Agreement, BLA invested a substantial sum of money in Mejia.
BLA has invested a total of $360,000 in Mejia under agreements with Mejia, including the Third
Brand Agreement.

3.      BLA has performed each and every one of its obligations under the Third Brand
Agreement.

4.      Mejia was and continues to be bound by the Third Brand Agreement.

**Count I:  Declaratory Judgment**

5.      BLA realleges and incorporates by reference the allegations in paragraphs 1 through
4 as if fully set forth herein.

6.      BLA contends that the Third Brand Agreement is a valid and enforceable contract.

7.      Mejia contends that it is not.  *See* Compl. ¶ 28.

8.      An actual controversy exists involving the rights or other legal relations of and
between B L A  and Mejia.  The controversy is between BLA and Mejia, and their interests are real

and adverse.  The issue involved in the controversy is currently ripe for judicial determination.

9.     A declaratory judgment in this case will terminate the controversy between BLA and Mejia.

10.    Accordingly, BLA is entitled to a declaratory judgment declaring that the Third Brand Agreement is a valid and enforceable contract.

## Count II:  Breach of Confidentiality Agreement

11.    BLA realleges and incorporates by reference the allegations in paragraphs 1 through 4 as if fully set forth herein.

12.    Pursuant to Section 5 of the Third Brand Agreement, entitled "Confidential Information," Mejia and BLA agreed "not to disclose any Confidential Information of the other Party, or any part or parts thereof, to any . . . individuals . . . ."  Compl. Ex. A, Section 5.2.  Mejia and BLA also agreed "to undertake whatever action is necessary . . . to prevent or remedy any breach of such Party's confidentiality obligations . . . ."  *Id.*

13.    Under the Third Brand Agreement, "Confidential Information" includes "the existence of and terms of this [Third Brand] Agreement and the Prior Agreements [between Mejia and BLA]."  Compl. Ex. A. Section 5.1.

14.    The existence of and the specific terms of the Third Brand Agreement are BLA's confidential, proprietary, sensitive, and/or commercially valuable information and entitled to protection under the Third Brand Agreement and the laws of the state of Delaware.

15.    BLA has taken reasonable steps to protect its confidential, proprietary, sensitive, and/or commercially valuable information including the following:  (1) requiring players to sign written agreements to maintain the confidentiality of such information; (2) enforcing such confidentiality agreements; and (3) revealing its confidential, proprietary, sensitive, and/or

commercially valuable information only to individuals and entities under similar restrictions to keep such information confidential.

16.     Mejia acknowledged the value and sensitivity of BLA's confidential, proprietary, sensitive, and/or commercially valuable information when he executed the Third Brand Agreement, which stated:  "due to the unique nature of [BLA's] Confidential Information, the unauthorized disclosure or use of [BLA's] confidential information . . .  will cause irreparable harm and significant injury to [BLA], the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law."  Compl. Ex. A. Section 5.4.

17.     Nevertheless, on February 21, 2018, Mejia published the entire Third Brand Agreement as an exhibit to his Complaint on the Court's public docket.  Mejia also described the terms of the Third Brand Agreement in the body of his Complaint, also filed on the Court's public docket.  Mejia made no attempt to seal these materials.

18.     Mejia's public filing of the Third Brant Agreement and its terms constitutes a breach of Section 5 of the Third Brand Agreement.

19.     On March 12, 2018, BLA advised Mejia's counsel that the public filing of the Third Brand Agreement and his description of the terms of the Third Brand Agreement in the body of his Complaint constituted a breach of Section 5 of the Third Brand Agreement.  BLA requested that Mejia move to seal the Third Brand Agreement and the portions of the Complaint that describe the terms of the Third Brand Agreement.

20.     Mejia's counsel refused to do so.

21.     Mejia's public filing exposed BLA's confidential, proprietary, sensitive, and/or commercially valuable information to the public, including BLA's competitors.

22.     BLA is informed and has reason to believe that Mejia has wrongfully disclosed

BLA's confidential, proprietary, sensitive, and/or commercially valuable information to other third parties.

23.     Any such disclosure would also constitute a breach of Section 5 of the Third Brand Agreement.

24.     BLA has a legitimate interest in enforcing Section 5 of the Third Brand Agreement and protecting its confidential, proprietary, sensitive, and/or commercially valuable information.

25.     BLA has been damaged by Mejia's breaches in an amount to be determined at trial, plus attorneys' fees and other costs stemming from Mejia's breach.

26.     BLA, absent the relief sought herein, will be unable to protect itself against the unauthorized disclosure and use of its confidential, proprietary, sensitive, and/or commercially valuable information, and it stands to suffer, and will continue to suffer, irreparable harm.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, BLA requests that the Court dismiss Mejia's claims, enter judgment in BLA's favor and against Mejia on his Complaint, enter judgment in BLA's favor and against Mejia on BLA's counterclaims, and such other relief as this Court deems just and proper, including:

(i)     dismissal of Mejia's claims with prejudice;

(ii)    denial of all relief requested by Mejia;

(iii)   entry of judgment in favor of BLA on Mejia's Complaint;

(iv)    entry of a declaratory judgment declaring that the Third Brand Agreement is a valid and enforceable contract;

(v)     entry of judgment in favor of BLA and against Mejia for Mejia's breach of the Third Brand Agreement's confidentiality provisions;

(vi)    a temporary injunction against Mejia prohibiting him from disclosing any

provisions of the Third Brand Agreement and any previous agreements with BLA

(vii)    a permanent injunction against Mejia prohibiting him from disclosing any provisions of the Third Brand Agreement and any previous agreements with BLA;

(viii)    an award of damages in favor of BLA for Mejia's breach of the Third Brand Agreement;

(ix)    an award of pre- and post-judgment interest to BLA;

(x)    an award of all costs for this action (including for the counterclaim) to BLA, including reasonable attorneys fees;

(xi)    all further relief to which BLA may be entitled in law or in equity.

<table>
<tr><td><i>Of Counsel:</i></td><td>ASHBY & GEDDES</td></tr>
<tr><td></td><td><i>/s/ Tiffany Geyer Lydon</i></td></tr>
<tr><td>Marc Zwillinger</td><td>_____</td></tr>
<tr><td>Jeffrey Landis</td><td>Philip Trainer, Jr. (#2788)</td></tr>
<tr><td>Nury Siekkinen</td><td>Tiffany Geyer Lydon (#3950)</td></tr>
<tr><td>ZWILLGEN PLLC</td><td>500 Delaware Avenue, 8th Floor</td></tr>
<tr><td>1900 M St. NW, Ste. 250</td><td>P.O. Box 1150</td></tr>
<tr><td>Washington, DC 20036</td><td>Wilmington, DE 19899</td></tr>
<tr><td>(202) 706-5203</td><td>(302) 654-1888</td></tr>
<tr><td>marc@zwillgen.com</td><td>ptrainer@ashbygeddes.com</td></tr>
<tr><td>jeff@zwillgen.com</td><td>tlydon@ashbygeddes.com</td></tr>
<tr><td>nury@zwillgen.com</td><td></td></tr>
<tr><td></td><td><i>Attorneys for Defendant</i></td></tr>
<tr><td>Dated:  April 12, 2018</td><td></td></tr>
</table>